# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Clifford J. Webb, Jr., <br><br> Plaintiff, <br><br> v. <br><br> County of Allendale, a body corporate and politic, Charles Rowell in his capacity as Assistant Sheriff for Allendale County, South Carolina, J. Albayalde, Agent with the South Carolina Law Enforcement Division, Tonia Capers, Director of the Allendale County Detention Center, <br><br> Defendants. | Civil Action No.: 1:15-cv-02766-JMC |
| Brenda Diane Webb, <br><br> Plaintiff, <br><br> v. <br><br> County of Allendale, a body corporate and politic, Charles Rowell in his capacity as Assistant Sheriff for Allendale County, South Carolina, Kelvin Jones, Director of the Hampton County Detention Center, <br><br> Defendants. | Civil Action No.: 1:15-cv-02767-JMC <br><br> **ORDER AND OPINION** |

This matter is before the court pursuant to Magistrate Judge Paige Gossett's Report and Recommendation ("Report"), recommending that Defendants' Motions for Summary Judgment be granted as to Plaintiffs' claims for false imprisonment pursuant to 42 U.S.C. § 1983. (C/A No.: 1:15-cv-02766-JMC, ECF No. 71; C/A No.: 1:15-cv-02767-JMC, ECF No. 65.)[1] The Magistrate Judge also recommends that the court decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. (C/A No.: 1:15-cv-02766-JMC, ECF No. 71; C/A No.: 1:15-cv-02767-JMC, ECF No. 65.)

---

[1] The court addresses these matters together because of their shared parties, facts, and legal issues.

Plaintiffs filed an objection to the Report (C/A No.: 1:15-cv-02766-JMC, ECF No. 72; C/A No.: 1:15-cv-02767-JMC, ECF No. 66), and Defendants filed a reply (C/A No.: 1:15-cv-02766-JMC, ECF No. 73; C/A No.: 1:15-cv-02767-JMC, ECF No. 67). For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (C/A No.: 1:15-cv-02766-JMC, ECF No. 71; C/A No.: 1:15-cv-02767-JMC, ECF No. 65), thereby **GRANTING** Defendants' Motions for Summary Judgment (C/A No.: 1:15-cv-02766-JMC, ECF Nos. 53, 54; C/A No.: 1:15-cv-02767-JMC, ECF Nos. 50, 53).

I. RELEVANT FACTUAL BACKGROUND

Plaintiffs, who are married to each other, are members of the Yamassee Nation, a Native American tribe and reservation located in Allendale County, South Carolina. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 3.) Brenda Webb's son, Donald Franklin, also known as Grand Chief Sekhu Hidden Eagle Gentle, is the Grand Chief of the Yamassee Nation. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 3.) On August 26, 2011, while the tribe was residing in Florida, Bilqiys Muhammad gave birth to Franklin's son. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 3.) The name on the child's birth certificate was Li'Mahil Diane Gentle, but unbeknownst to Plaintiffs or Franklin, Bilqiys Muhammad later changed the child's name to Pocahontas Limahi Muhammad by filing a delayed record of the child's birth. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 3-4; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 3-4.)

In November 2011, the Yamassee Tribe, including Bilqiys Muhammad and her child, moved to Allendale County, South Carolina, on land they claim is a Native American reservation. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 3.) In February 2013, Bilqiys Muhammad and her child moved to Philadelphia, Pennsylvania. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 3.) But in April 2013, Bilqiys Muhammad called Brenda Webb and asked if she would come to Philadelphia to pick up her child out of fear for the child's safety because of abuse Bilqiys Muhammad had endured by her family member in her

Philadelphia home.  (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 3.)  That month, Brenda Webb and other members of the tribe drove to Philadelphia, picked up Bilqiys Muhammad's child (Brenda Webb's grandchild), and brought the child back to the reservation in Allendale County.  (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 3.)

A dispute of fact exists about whether Bilqiys Muhammad ever called Plaintiffs and asked to have the child returned to her custody.  Regardless, the undisputed record shows Bilqiys Muhammad traveled to South Carolina on August 31, 2013, with the intention of retrieving her child, and she enlisted the help of local law enforcement.  (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-3 at 3-4, ECF No. 53-4 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 53-10 at 3-4.)  Bilqiys Muhammad obtained a temporary order of custody for the child from a family court in Philadelphia, identifying the child on the order by using the name of Pocahontas Limahi Muhammad.  (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 4; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 4.)  Bilqiys Muhammad attempted to register the temporary order of custody in a South Carolina court on December 9, 2013, but although she was not aware of this at the time, she failed to properly register the order.[2]  (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 4; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 4.)  The temporary order was provided to law enforcement, including Defendants Jomar Albayalde of the South Carolina Law Enforcement Division and Charles Rowell of the Allendale County Sheriff's Office.  (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-4 at 3, ECF No. 57-4 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 53-4 at 3.)  Allendale County Sheriff's Department personnel took the temporary order to the Allendale County Clerk of Court and an Allendale County Family Court judge, who both informed the personnel that the order was authentic and valid, and consequently, the Allendale County Sheriff's Office understood at that time that it was required to enforce the order.  (C/A No.: 1:15-cv-02767-JMC, ECF No. 57-4 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No.

---

[2] *See* S.C. CODE ANN. § 63-15-358 (2012).

53-4 at 3.) Similarly, Ablayalde had the temporary order reviewed by a deputy solicitor in the Fourteenth Solicitor's Office and, based upon the solicitor's advice, believed he had the authority to enforce the order. (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-4 at 3, 6.)

Based on this advice, Albayalde, Rowell, and other law enforcement officers not named as defendants in these cases sought to enforce the temporary order. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 4-5; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 4-5.) On multiple occasions, Albayalde, Rowell, and others went to the Yamassee Tribe reservation to take custody of Bilqiys Muhummad's child. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 4-5; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 4-5.) On December 9, 2013, Rowell appeared at the reservation in an attempt to enforce the order. (C/A No.: 1:15-cv-02766-JMC, ECF No. 66-5 at 3.) Rowell told Plaintiffs that he had a custody order for a child named Pocahontas Muhammad, the child of Brenda Webb's son Donald Franklin and Bilqiys Muhammad. (C/A No.: 1:15-cv-02766-JMC, ECF No. 66-5 at 3.) Plaintiffs claimed that they did not know a child by that name and thereafter did not speak to Rowell. (C/A No.: 1:15-cv-02766-JMC, ECF No. 66-5 at 3.) On December 10, 2013, Rowell and Albayalde again appeared at the reservation with other law enforcement officers to enforce the order, but this time, the officers had a search warrant to search for the child on the reservation. (*Id*. at 4.) Plaintiffs again denied knowing a child by that name, despite the officers' assertion that the child was the child of Brenda Webb's son Donald Franklin and Bilqiys Muhammad. (*Id.*) After she was shown a picture of the child, Brenda Webb told the officers she could not identify the child, but later she admitted the child was her granddaughter. (*Id*.; C/A No.: 1:15-cv-02766-JMC, ECF No. 53-5 at 2.) Plaintiffs also told the officers that they knew where the child was and refused to turn her over to law enforcement. (C/A No.: 1:15-cv-02766-JMC, ECF No. 66-5 at 4, ECF No. 53-5 at 2.)

On December 11, 2013, Rowell, Albayalde, and other law enforcement officers again appeared at the reservation, but this time, the officers had secured a warrant for Brenda's arrest for custodial

4

interference.³ (C/A No.: 1:15-cv-02766-JMC, ECF No. 66-5 at 4.) Albayadle had again consulted with a deputy solicitor in the Fourteenth Circuit Solicitor's Office who advised him that probable cause for the issuance of warrants existed and, if the officers were met with the same type of resistance from the tribe's members when the officers returned to the reservation, the officers would have probable cause to charge the members with custodial interference. (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-4 at 5.) Because Plaintiffs again refused to cooperate with the search or disclose the location of the child, they were both placed under arrest at the scene for custodial interference. (C/A No.: 1:15-cv-02766-JMC, ECF No. 57-4 at 5; C/A No.: 1:15-cv-02767-JMC, ECF No. 53-4 at 5.) Brenda Webb was arrested pursuant to the previously issued arrest warrant, and Rowell secured an arrest warrant for Clifford Webb on the following day, December 12, 2013. (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-6 at 2.)

Plaintiffs were held in jail for three days without a hearing until they were released on bond.⁴ (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 5; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 5.) In January 2014, the Allendale County Family Court entered an order finding that the temporary custody order from a Pennsylvania court had not been properly registered in accordance with South Carolina law and was therefore unenforceable. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 5; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 5.) Consequently, the Allendale County Family Court ordered law enforcement to cease efforts to enforce the temporary custody order. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 5, ECF No. 66-4 at 5; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 5.) Following proceedings in the Allendale County Family Court, Bilqiys Muhammad was awarded full custody of the child. (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-2 at 18-19.)

---

³ *See* S.C. CODE ANN. § 16-17-495 (2012) (establishing the criminal offense of custodial interference).
⁴ Clifford Webb was detained at the Allendale County Detention Center and Brenda Webb was detained at the Hampton County Detention Center. (C/A No.: 1:15-cv-02766-JMC, ECF No. 57-7 at 3, ECF No. 57-8 at 3; C/A No.: 1:15-cv-02767-JMC, ECF No. 53-7 at 3, ECF No. 53-8 at 3.)

## II. RELEVANT PROCEDURAL BACKGROUND

Initially, the court notes Plaintiffs' Amended Complaints are equivocal as to what claims they raise pursuant to 42 U.S.C. § 1983. Each Amended Complaint contains a paragraph in the "Statement of Facts" section that states:

> The acts complained of herein above were committed under the color of the State law and deprived the Plaintiff of the equal protection of the laws of the State of South Carolina and the United States of America, and deprived the Plaintiff of the rights, privileges and immunities guaranteed to [him/her] as a citizen of the State of South Carolina and the United States of America in violation of 42 U.S.C § 1983 and denied Plaintiff the rights guaranteed to [him/her] by Article 1 Section 3; Article 1 Section 10; Article 1 Section 15; and Article 1 Section 23 of the Constitution of the State of South Carolina and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

(C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 7; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 6.) Each Amended Complaint also lists only three causes of action—gross negligence, false imprisonment, and intentional infliction of emotional distress—without expressly stating which causes of action, if any, are brought pursuant to §1983. (C/A No.: 1:15-cv-02766-JMC, ECF No. 5 at 7; C/A No.: 1:15-cv-02767-JMC, ECF No. 5 at 6.) Moreover, all three causes of action are recognized tort claims under South Carolina law, and therefore could be construed as state law claims only.

While Defendants recognize the ambiguity in the Amended Complaints, they also presume Plaintiffs' false imprisonment claims are made pursuant to § 1983 and move for summary judgment on this cause of action. (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-1, ECF No. 57-1; C/A No.: 1:15-cv-02767-JMC, ECF No. 50, 53-1.) In their responses to the Motions for Summary Judgment, Plaintiffs do not dispute Defendants' construction of the Complaint. (C/A No.: 1:15-cv-02766-JMC, ECF No. 66, C/A No.: 1:15-cv-02767-JMC, ECF No. 61.) Accordingly, the court construes the Amended Complaints as raising claims of false imprisonment in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983.

In their Motions, Defendants espouse they are entitled to summary judgment because the record shows that probable cause existed for Plaintiffs' arrest for custodial interference. (C/A No.: 1:15-cv-

02766-JMC, ECF Nos. 53, 54; C/A No.: 1:15-cv-02767-JMC, ECF Nos. 50, 53) Plaintiffs, in response, posit that since the Pennsylvania Family Court order of custody was not properly registered in South Carolina pursuant to S.C. CODE ANN. § 63-15-358 (2012), Defendants lacked probable cause to arrest Plaintiffs. (C/A No.: 1:15-cv-02766-JMC, ECF No. 66; C/A No.: 1:15-cv-02767-JMC, ECF No. 61.)

### III. LEGAL STANDARD

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The movant bears the initial burden of demonstrating to the court that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this threshold showing has been made, the non-moving party cannot survive summary judgment by resting on the allegations in

7

the pleadings. Rather, the non-moving party must provide specific, material facts giving rise to a genuine issue. *See id*. at 324. Under this standard, the mere scintilla of evidence is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 255 (1986).

## IV. ANALYSIS

The parties were advised of their right to file objections to the Report and Recommendation. (C/A No.: 1:15-cv-02766-JMC, ECF No. 71 at 14; C/A No.: 1:15-cv-02767-JMC, ECF No. 65 at 14.) On September 7, 2017, Plaintiffs filed objections to the Magistrate Judge's Report and Recommendation. (C/A No.: 1:15-cv-02766-JMC, ECF No. 72; C/A No.: 1:15-cv-02767-JMC, ECF No. 66.) In their objections, Plaintiffs restate their position in their Complaint regarding the lack of probable cause for Plaintiffs' arrest. (C/A No.: 1:15-cv-02766-JMC, ECF No. 72; C/A No.: 1:15-cv-02767-JMC, ECF No. 66.) In addition, Plaintiffs contend that (1) the Magistrate Judge wrongly decided that two law enforcement officers who are named as Defendants in this action were entitled to qualified immunity; and (2) the court made no recommendation as to the County of Allendale, which is also a named Defendant in this action. (C/A No.: 1:15-cv-02766-JMC, ECF No. 72; C/A No.: 1:15-cv-02767-JMC, ECF No. 66.) The court will not address Plaintiffs' contention that the Magistrate Judge applied qualified immunity to this action because the Magistrate Judge's reasoning does not reach such a finding, but instead relies on a cogent probable cause determination.[5]

### A. Plaintiffs' Fourth Amendment Claims Pursuant to 42 U.S.C. § 1983

A legal action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey,*

---

[5] The court notes that Plaintiffs make the additional argument in their objections that since the Yamassee Native American Nation is recognized by the Colonial Government of South Carolina, the Magistrate Judge "exercises an authority [through her Report] not given to her by the Constitution and statutory laws of this country . . . tainting her entire decision." (C/A No.: 1:15-cv-02766-JMC, ECF No. 72 at 2; C/A No.: 1:15-cv-02767-JMC, ECF No. 66 at 2.) The court finds this argument meritless and contrary to the law. *See* 28 U.S.C § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) (granting the Magistrate Judge the authority to submit proposed findings of fact and recommendations for disposition).

*Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government and requires warrants be issued only upon a finding of probable cause. U.S. Const. amend. IV. To establish a § 1983 claim for false imprisonment in violation of the Fourth Amendment, the plaintiff must show the seizure of his person was unreasonable, *i.e.*, he must show he was arrested without probable cause. *See Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) (stating that claims for false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"); *see also Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) (stating that to establish an unreasonable seizure under the Fourth Amendment, the plaintiff must show he was arrested without probable cause). Thus, there is no § 1983 claim for false imprisonment unless the officer lacked probable cause. *See Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir. 1974). Moreover, "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)); *see also Baker v. McCollan*, 443 U.S. 137, 144-45 (1979) (finding the plaintiff's false imprisonment claim failed because he was arrested pursuant to a facially valid warrant, which satisfied probable cause).

At the outset, the court notes that the evidence before the court does not conclusively show which Defendant, if any, arrested Plaintiffs.[6] However, even assuming the participation of Defendants Rowell

---

[6] The records conclusively show Defendants Allendale County, Capers, and Jones took no part in the arrest of Plaintiffs. None of the law enforcement officers involved in this matter are an agent of Allendale County. (C/A No.: 1:15-cv-02766-JMC, ECF No. 57-1 at 11; C/A No.: 1:15-cv-02767-JMC, ECF No. 53-1 at 11.) Capers and Jones are detention center officers who were not involved in

and Albayalde in the incident at issue is sufficient to raise a false imprisonment claim against them in either of Plaintiffs' cases, the court concludes that the records show probable cause existed to arrest Plaintiffs for custodial interference.

The South Carolina statute providing for the offense of custodial interference provides in relevant part:

> When a court of competent jurisdiction in this State or another state has awarded custody of a child under the age of sixteen years . . . it is unlawful for a person with the intent to violate the court order . . . to take or transport, or cause to be taken or transported, the child from the legal custodian for the purpose of concealing the child, or circumventing or avoiding the custody order or statute.

S.C. CODE ANN. § 16-17-495(2012).

Here, the totality of the circumstances confronting Defendants at the time of Plaintiffs' arrest shows Defendants had probable cause to believe Plaintiffs intended to violate the custody order by taking and concealing the child from her legal custodian, Bilqiys Muhammad. *See Brown*, 278 F.3d at 367 ("Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest."). First, Brenda Webb was arrested pursuant to an arrest warrant issued by a local magistrate, and she fails to even argue, much less provide any evidence, that the warrant was not valid on its face. Therefore, any claim of false imprisonment by Brenda Webb must fail. *See Baker*, 443 U.S. at 144-45; *Porterfield*, 156 F.3d at 568.[7] As to either Plaintiff, after being told by Defendants that

---

Plaintiffs' arrests. (C/A No.: 1:15-cv-02766-JMC, ECF No. 57-7 at 2, ECF No. 57-8 at 2; C/A No.: 1:15-cv-02767-JMC, ECF No. 53-7 at 2, ECF No. 53-8 at 2.) Moreover, Defendant Albayalde, who is only a defendant in Plaintiff Clifford Webb's case, provided uncontradicted sworn testimony that he did not personally place Clifford Webb under arrest or transport him to the county detention center. (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-4 at 5.)

[7] The court also notes that Rowell secured an arrest warrant for Clifford Webb the following day, which supports Defendants' contention that probable cause existed for his arrest. *See generally Baker*, 443 U.S. at 143 (stating probable cause, as a condition for any significant pretrial restraint of liberty, must be made by a judicial officer either before or promptly after arrest) (quoting *Gerstein v. Pugh*, 420 U.S. 103 (1975)); *Brooks*, 85 F.3d at 184 ("Once a pretrial seizure has been rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate, the continuing pretrial seizure of a criminal defendant—either by detention or by bond restrictions—is reasonable.") (citing *Taylor v.*

an order of custody existed establishing that Bilqiys Muhammad was the proper custodian of the child, Plaintiffs admitted to Defendants that they knew where the child was, that they would not reveal the child's location to Defendants, and that they would not return the child to her proper custodian. These undisputed facts are conclusively established by Albayalde and Rowell's sworn Affidavits (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-4 at 4, ECF No. 57-4 at 5; C/A No.: 1:15-cv-02767-JMC, ECF No. 53-4 at 5.), body camera videos depicting Plaintiffs' arrest (C/A No.: 1:15-cv-02766-JMC, ECF No. 53-5 at 2), and by Plaintiffs' own sworn Affidavits (C/A No.: 1:15-cv-02766-JMC, ECF No. 66-5 at 4; ECF No. 66-6 at 2).[8] Therefore, based on the information Plaintiffs themselves provided to Defendants, Defendants reasonably believed Plaintiffs were committing custodial interference. *See Brown*, 278 F.3d at 368 ("For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required.").

As to Plaintiffs' argument that Bilqiys Muhammad's failure to properly register the Pennsylvania Family Court order of custody precluded a determination of probable cause, Plaintiffs provide no support for their position. The statute establishing the offense of custodial interference makes no reference to whether an out-of-state order of custody is properly registered in South Carolina pursuant to S.C. CODE ANN. § 63-15-358 (2012). Rather, the statute merely makes it unlawful for anyone to take a child from a legal custodian with the intent to violate a court order from "this State or another state" awarding custody of that child. S.C. CODE ANN. § 16-17-495 (2012). Additionally, S.C. CODE ANN. § 63-15-358 (2012) appears to affect only the ability of a person who seeks enforcement of a child custody determination to prosecute their case in family court. *See* S.C. CODE ANN. § 63-15-

---

*Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996)).
[8] To be clear, evidence from Albayalde's Affidavit does not appear in the record in Brenda Webb's case, but the evidence in the record is still sufficient to find that probable cause existed for her arrest even absent the arrest warrant.

11

350 (2012) (defining "petitioner" as it is used in this subarticle), § 63-15-354 (2016) (providing conditions for state courts to recognize child custody determinations from other states), and § 63-15-360 (2016) (granting state courts the authority to enforce registered out-of-state child custody orders). Thus, it appears Plaintiffs are conflating Bilqiys Muhammad's ability to enforce the Pennsylvania order in a South Carolina family court custody proceeding pursuant to S.C. CODE ANN. § 63-15-358 (2012) with law enforcement's ability to enforce the Pennsylvania order by making arrests pursuant to § 16-17-495 (2012).

Accordingly, the court finds that the record shows Defendants had probable cause to arrest Plaintiffs for custodial interference, and therefore, summary judgment is granted in Defendants' favor as to Plaintiffs' false imprisonment claims.

## B. Plaintiffs' Remaining State Law Claims

Because Plaintiffs' sole federal claims in these cases are without merit, the court declines to exercise supplemental jurisdiction over the state law causes of action raised by Plaintiffs.[9] *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996); *Tigrett v. Rector and Visitors of the Univ. of Va.*, 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.").

## C. Defendant Allendale County

Plaintiffs' objections inaccurately state, "[i]n addition, the Magistrate [Judge's] decision ignores Plaintiffs' claim against the County of Allendale for its participation in Plaintiffs' arrest." (C/A No.: 1:15-cv-02766-JMC, ECF No. 72 at 6; C/A No.: 1:15-cv-02767-JMC, ECF No. 66 at 6.) On the

---

[9] The court notes that not all Defendants addressed Plaintiffs' state law claims for gross negligence and intentional infliction of emotional distress in their Motions for Summary Judgment.

contrary, the Magistrate Judge's Report correctly finds that the causes of action in Plaintiffs' Amended Complaints all are recognized tort claims under South Carolina law, and further notes that the Amended Complaints have not raised any other federal claims in this case other than the claims addressed in the Report.

Specifically as to Allendale County, Plaintiffs' Amended Complaints neither plead a federal constitutional claim or cause of action or claim pursuant to Section 1983. As the Magistrate Judge notes, the "Amended Complaints are equivocal as to what claims they raise pursuant" to Section 1983, and the only federal constitutional claim that the parties construe to be asserted in Plaintiffs' Amended Complaint is one for false imprisonment in violation of the Fourth Amendment. (C/A No.: 1:15-cv-02766-JMC, ECF No. 71 at 7; C/A No.: 1:15-cv-02767-JMC, ECF No. 65 at 7.)

As a matter of law, Plaintiffs' Amended Complaints do not state the allegations required for municipal liability. Under the theory of municipal liability, local governments – such as Allendale County – may be held liable for *policies and customs* that deprive a person of their constitutional rights. *Monell v. Dept. of Social Services and the City of New York*, 436 U.S. 658 (1978) (emphasis added). In *Monell*, the United States Supreme Court clearly held that municipalities cannot be held vicariously liable under 42 U.S.C. § 1983 for the acts of their employees. *Id*. at 692. Instead, liability exists only when the execution of a municipal policy or custom inflicts the injury. *Id*. at 691. The Fourth Circuit has stated "that plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. Town of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (citation and quotation marks omitted). Plaintiffs failed to plead in their Amended Complaints the existence of a practice, policy, or custom of Allendale County that gave rise to Plaintiffs' alleged constitutional violation.

Additionally, Plaintiffs' position ignores that the county detention center is delegated to the authority of the Sheriff under South Carolina law: "the Sheriff is the custodian of the detention center

and is responsible for its operation. *See* S.C. CODE ANN. § 24–5–10." *Cobb v. South Carolina*, No. 2-13-cv-02370-RMG, 2014 WL 4220423, at *7 (D.S.C. 2014). "The sheriff and the county are distinct and separate entities in South Carolina and the sheriff's actions or failures to act do not give rise to a Section 1983 action against the county." *Id.* In *Cobb*, the court noted that the Fourth Circuit has held that "where Virginia law charged the sheriff with the operation of the jail, the county and county council could not be held liable for incidents occurring therein." *See Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir.1999) ("As the county has no control over policy within the jail, and it bears no [accompanying] responsibility."). The county also cannot be responsible for the actions of a county Magistrate Judge, as judges have absolute immunity from damages claims arising from their judicial actions. *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). This judicial immunity also extends to the county for a county Magistrate Judge's or a state Family Court Judge's judicial actions.

Accordingly, the Magistrate Judge correctly did not address the claims against Allendale County because Plaintiffs' Amended Complaints and claims do not equate to a federal constitutional violation by Allendale County.

### V.   CONCLUSION

Based on the foregoing, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (C/A No.: 1:15-cv-02766-JMC, ECF No. 71; C/A No.: 1:15-cv-02767-JMC, ECF No. 65), thereby **GRANTING** Defendants' Motion for Summary Judgment (C/A No.: 1:15-cv-02766-JMC, ECF Nos. 53, 54; C/A No.: 1:15-cv-02767-JMC, ECF Nos. 50, 53).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

January 31, 2018
Columbia, South Carolina